**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RONNIE THAXTON,

                                        Plaintiff,

            - v -                                                    Civ. No. 9:10-CV-1318
                                                                          (MAD/RFT)

A. SIMMONS, *Corrections Officer, Upstate Correctional*
*Facility*; GARY, *Corrections Officer, Upstate Correctional*
*Facility*; BUSH, *Corrections Officer, Upstate Correctional*
*Facility*; JOHN DOE, *Corrections Officer, Upstate Correctional*
*Facility*; K. GARNEAU, *Nurse, Upstate Correctional Facility*;
LOMBARD,[1] *Upstate Correctional Facility*,
                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

RONNIE THAXTON
Plaintiff, *Pro Se*
99-B-0711
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN                     CHRISTOPHER W. HALL, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        *Pro se* Plaintiff Ronnie Thaxton brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that the Defendants violated his constitutional rights while he was incarcerated at Upstate

Correctional Facility.  Dkt. No. 1, Compl.  Currently pending before the Court is Defendants'

Motion to Dismiss, Dkt. No. 20, which Plaintiff opposes, Dkt. No. 26.  For the reasons that follow,

it is hereby recommended that Defendants' Motion be **granted in part and denied in part**.

_____

        [1] Upon information and belief, Plaintiff has misspelled this Defendant's name.  We will refer to this Defendant
by the correct spelling: Lumbard.  *See* Dkt. No. 20-1, Defs.' Mem. of Law, at p. 3 n. 2.

## I. ALLEGATIONS IN THE COMPLAINT

In accordance with the applicable standard of review, discussed below, the following facts are derived from the Complaint and are taken as true.[2]  This factual recitation includes only those facts relevant to the remaining Defendants.[3]

At all times relevant to the matters at issue in the Complaint, Plaintiff was in the custody of the New York State Department of Corrections and Community Supervision (DOCCS) and was housed at Upstate Correctional Facility.[4]  On or about January 13, 2009, Plaintiff filed an inmate grievance regarding Defendant Simmons, whom Plaintiff claims harassed him and denied him food at dinner.  Compl. at p. 6.  Approximately three months later, on April 6, 2009, Plaintiff asked Defendants Simmons and Gary for another food tray because there was hair all over the one he had received.  *Id*.  Upon receiving another tray, Plaintiff asked Defendant Simmons why there always seemed to be an issue with his food each time Defendant Simmons worked.  *Id*.  Defendant Simmons replied that he didn't have time to play with Plaintiff's food, but if he were to play with his food, Plaintiff would know.  *Id*.  Defendant Gary added that he could accommodate Plaintiff by putting something in his food.  *Id*.  Plaintiff believed that both Gary and Simmons were threatening him. The following day, on April 7, 2009, Defendant Gary made more comments to Plaintiff about his

---

[2] References to the Complaint are to the page numbers automatically assigned by the Court's Case Management Electronic Case Files System.

[3] On March 29, 2011, the Honorable Gary L. Sharpe, Chief United States District Judge, performed an initial review of Plaintiff's Complaint, pursuant to 28 U.S.C. § 1915(e), and dismissed several Defendants and corresponding claims included in the Complaint.  Dkt. No. 6.  More specifically, Chief Judge Sharpe determined that Plaintiff failed to state a cognizable claim against Defendants Bellnier, Duvall, and Bellamy, and thus dismissed them from this action. *Id*.  Any allegation of fact relating solely to these dismissed claims and Defendants will not be discussed.

[4] Upstate is a maximum security prison comprised exclusively of special housing unit (SHU) cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day.  *See Samuels v. Selsky*, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

food while serving his dinner meal.  Plaintiff refused to eat out of fear that his food had been tampered with.  *Id*.  On April 9, 2009, Plaintiff filed an inmate grievance regarding these incidents.  *Id*.

Later that month, on April 28, 2009, Plaintiff was served a kosher dinner meal by Defendants Bush and Doe.  *Id*. at p. 8.  After putting his sardine sandwich together, Plaintiff took a few bites, felt a sharp pain and grinding in his mouth, and promptly spit out the food.  *Id*.  Plaintiff noticed he had spit out a gold colored piece of metal and that there were drops of blood on the spit-out food.  He immediately called for medical attention and Defendant Bush responded by promptly notifying Defendants Sergeant Lumbard and Nurse Garneau.  *Id*.  Upon Lumbard's and Garneau's arrival at Plaintiff's cell, Plaintiff imparted what occurred.  Defendant Garneau gave Plaintiff a medical incident form to fill out and Defendant Lumbard took possession of the metal piece and placed it in a ziplock bag to be photographed and placed on file.[5]  *Id*.  Plaintiff asked Defendant Garneau to examine him, to which she responded that there was not much damage.  *Id*.  Plaintiff further emphasized that he was cut and was in pain, to which Defendant Garneau walked off stating "don't be a cry baby."  *Id*. at p. 9.

## II.  DISCUSSION

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will

---

[5] Based upon responses received to several Freedom of Information Law requests, Plaintiff believes that Defendant Lumbard failed to properly make a record of the incident.  Compl. at p. 15.

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

-4-

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555).  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

### B.  Eighth Amendment Claims

#### 1.  Failure to Protect

Defendants assert that the only claims raised pursuant to a failure to protect theory are brought against the previously dismissed Defendants, Bellnier, Duvall, and Bellamy.  Although Plaintiff attempts to reinvigorate these claims through his Opposition papers, he cannot change the fact that such claims were specifically addressed by the Honorable Gary L. Sharpe, Chief United States District Judge, when he dismissed these Defendants from the action; such rulings are binding

upon this Court as law of the case. *In re PCH Assoc*, 949 F.2d 585, 592 (2d Cir. 1991) (noting that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Plaintiff has not asserted any facts that would raise the inference that any remaining Defendant failed to protect him.

Furthermore, his allegations regarding veiled threats are not sufficient to raise a constitutional claim against any of the remaining Defendants. *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996), for the proposition that a claim brought under § 1983 is "not designed to rectify harassment or verbal abuse"); *Aziz Zarif Shabazz v. Picco*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (noting that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute a violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (internal quotation marks and citations omitted). Therefore, we agree with Defendants that any Eighth Amendment claims arising from a theory of failing to protect Plaintiff or from verbal harassment or threats should be **dismissed**.

### *2. Nutritional Food*

The Eighth Amendment places a duty upon prison officials to ensure that prisoners receive adequate food. *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991) (noting that prisoners are guaranteed a nutritionally adequate diet). In this regard, prisoners are to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *see also Lunney v. Brureton*, 2005 WL 121720, at *6

(S.D.N.Y. Jan. 21, 2005) (citing *Robles v. Coughlin*, 725 F.2d at 14).  Consequently, "[d]epriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles v. Coughlin*, 725 F.2d at 15).  Allegations of food tampering alone would not alone suffice to establish an Eighth Amendment violation; in addition, a plaintiff must allege that he or she suffered "distinct and palpable injury." *M.F. v. Reish*, 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

In the case at bar, there are two alleged incidents wherein the reasonable inference of food tampering can be drawn.  The first is the April 6th incident when the food tray served to Plaintiff by Defendant Simmons had hair on it; the second is the April 28th incident when Defendants Bush and Doe served Plaintiff a food tray that contained a piece of metal in the sardines.  Because Plaintiff provides no allegations of injury stemming from the April 6th incident, we find that the food tampering claim against Defendant Simmons does not rise to the level of an Eighth Amendment violation.  However, the same cannot be said of the April 28th incident wherein Plaintiff ingested, but spit out, the piece of metal, which caused injuries to his tongue and cheek.  These injuries developed into dental pain and numbness to the right side of his face.  At this stage of the litigation, taking Plaintiff's allegations of fact as true, we find that Plaintiff has stated enough facts to plausibly show that his food was tampered with and that it caused palpable injury to him.  Thus, we recommend **denying** Defendants' Motion to Dismiss as to the Eighth Amendment claim against Defendants Bush and Doe.[6]

---

[6] With this recommendation, we provide Plaintiff with his third warning that he must take steps to identify the John Doe Defendant.  *See also* Dkt. No. 6 at p. 9 (informing Plaintiff that the Marshals Service cannot serve a Doe Defendant and that he must take steps to ascertain the identify should he wish to avoid dismissal); Dkt. No. 29 at p. 6

(continued...)

### 3. Medical Care

The final Eighth Amendment claim asserted in the Complaint is against Defendant Garneau

for her alleged failure to provide medical care to Plaintiff.  According to Plaintiff, he informed

Defendant Garneau that the metal had cut the inside of his mouth and he asked her to examine him,

to which she replied, without examination, that he was fine and to not be such a cry baby.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must

demonstrate that prison officials acted with "deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant

to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark

the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d

896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).  When complaining of the

denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2)

deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin*

*("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).  The first prong is an objective standard and

considers whether the medical condition is sufficiently serious.  The Second Circuit has stated that

a medical need is serious if it presents "a condition of urgency that may result in degeneration or

extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks

and citation omitted).  Among the relevant factors to consider are "[t]he existence of an injury that

a reasonable doctor or patient would find important and worthy of comment or treatment; the

---

[6](...continued)

(directing Plaintiff to take reasonable steps to ascertain Doe identity).  His failure to do so will result in dismissal of his claims against this Defendant.  Recently, Plaintiff submitted a letter noting his efforts to identify this individual.  Dkt. No. 30.  Should this Court's recommendations be adopted, this case will proceed to the discovery phase wherein Plaintiff can seek information directly from the remaining Defendants that may aid him in this effort.

presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

At this stage, we find that Plaintiff has adequately pled a claim for deliberate indifference.  First, we disagree with Defendants' categorization of the Plaintiff's medical condition as not serious and that Defendant Garneau's reaction to his request for medical care further shows the lack of seriousness of such condition.  Plaintiff asserts that the inside of his mouth had been cut by a metal object and that he was bleeding.  Such condition is one that is worthy of medical care and, if left untreated, could lead to more serious medical problems. *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Guiterrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), for the proposition that "failure

to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain").  In fact, Plaintiff avers that he suffered further complications from the denial of treatment, such as numbness and difficulty eating.  While upon further review of the record, it may be clearer that Plaintiff received treatment, or that his medical condition was not so serious, at this stage, taking all facts alleged by Plaintiff as true, we find that he has stated enough facts to plausibly allow his claim of deliberate indifference to go forward.  Therefore, we recommend **denying** Defendants' Motion to Dismiss with regard to the Eighth Amendment claims stated against Defendant Garneau.

### C.  First Amendment Claims

Plaintiff asserts that his First Amendment rights were violated in several ways.  First, he states that the threats of food tampering, combined with actual food tampering, impeded his right to exercise his religion by eating a kosher diet.  Next, he claims that the Defendants violated his First Amendment rights when they retaliated against him, through threats and food tampering, because he exercised his First Amendment right to file grievances.  We consider each of these claims *seriatim*.

#### 1.  Interference with Religion

Prisoners maintain some measure of constitutional protection afforded by the Free Exercise Clause of the First Amendment.  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Among those protected rights is the right to receive a kosher diet.  *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (citing *Kahane v. Carlson*, 527 F.2d 492 (2d Cir. 1975), for the proposition that it is clearly established "that a prisoner has a right to a diet consistent with his or her religious scruples").  Such rights, however, are balanced against the "interests of prison officials charged with complex duties

arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990); *see also Pell v. Procunier*, 417 U.S. at 822.  Free exercise claims of prisoners are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Ford v. McGinnis*, 352 F.3d at 588.  Courts must analyze free exercise claims by evaluating "1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; 2) whether the challenged practice of the prison officials infringes upon the religious belief; and 3) whether the challenged practice of the prison official furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d at 926 (citations omitted).

Plaintiff asserts that because his food tray was contaminated on two occasions, only the latter of which he specifies as a kosher meal, his right to exercise his religion and receive kosher meals has been infringed.  First, it is not clear what religion Plaintiff professes to adhere to.  Because he makes passing reference to a "jewish diet," we will presume, for our purposes here, that he practices Judaism.  However, it is not enough for Plaintiff to merely reference his religion.  He must also allege that he possesses sincerely held religious beliefs.  "[S]crutiny of the prisoner's sincerity is often essential in differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Ford v. McGinnis*, 352 F.3d at 588 (internal quotation marks and citations omitted).  No where in the Complaint does Plaintiff allege the sincerity of his beliefs and what role the kosher diet plays therein.  Mere membership in an established religion is not enough to show that a prisoner has sincerely held religious beliefs.  *Id.* (citing *Jackson v. Mann*, 196 F.3d 316, 317-21  (2d Cir. 1999)).

*-11-*

But the real question is whether the contamination of two meals constitutes a substantial burden on Plaintiff's free exercise claims.  We submit that it does not.  In making this assessment, we note that in both instances, after Plaintiff brought the problem to the respective Defendant's attention, Plaintiff was provided with a different tray.  Thus, Plaintiff was not denied the ability to express his allegedly sincerely held belief of maintaining a religious diet.  Notwithstanding Plaintiff's protestations and impressions that the Defendants have all conspired against him, the minor disruption of two kosher meals during a four-month period can hardly be called a substantial burden.  At best, these incidents present a *de minimis*, or insubstantial, burden on Plaintiff's ability to freely exercise his religion.  *See, e.g., Graham v. Mahmood*, 2008 WL 1849167, at *10 (S.D.N.Y. Apr. 22, 2008) (citing, *inter alia*, *Hanton v. Mathiau*, 29 F. App'x 772, 773 (2d Cir. 2002), for the proposition that preventing a prisoner who was a member of the Nation of Islam from making one round of bean pie deliveries had a *de minimis* and insubstantial burden on the prisoner's free exercise rights); *Tafari v. Annets*, 2008 WL 4449372, at *1 (S.D.N.Y. Oct. 2, 2008) (Daniels, D.J.) (adopting magistrate judge's report and recommendation that denial of kosher meals on two occasions "constitute[d] a *de minimis*, not a substantial, interference" with the prisoner's free exercise of religion), *aff'd* 363 F. App'x 80 (2010).   Therefore, we recommend **granting** Defendants' Motion to Dismiss as to Plaintiff's First Amendment religious exercise claims.

### 2. Retaliation and Conspiracy

Plaintiff's final First Amendment claim is that the Defendants conspired together to retaliate against him for exercising his right to file grievances, and possibly for exercising his religious beliefs.

To support a conspiracy claim under § 1983, a plaintiff must demonstrate or allege (1) an

agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).

Here, we have no facts, beyond Plaintiff's conclusory statements, that the Defendants have acted in concert. Thus, Plaintiff has failed to plausibly state that the Defendants acted in concert to violate his constitutional rights and such claims should be **dismissed**.

Turning to the specific retaliation allegations, the Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate that (1) he or

*-13-*

she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

Plaintiff asserts that the grievance he filed against Defendant Simmons on January 13, 2009, was an exercise of his First Amendment right and was the impetus for all subsequent retaliatory conduct. We can easily find that Plaintiff satisfies the first prong of a retaliation claim when he filed a grievance against Defendant Simmons. Plaintiff also claims that this same Defendant contaminated his food tray with hair. While Simmons promptly provided Plaintiff with another food tray, the close proximity of the filed grievances against him, coupled with the discussion that ensued on April 6th is enough for Plaintiff to eke out a retaliation claim at this stage.[7] Thus, we recommend **denying** Defendant Simmons's request to have the retaliation claim against him dismissed.

However, Plaintiff's claims of retaliation against Defendants Bush and Doe are nothing more than conclusory, and, in light of the factual allegations, implausible. Plaintiff believes that Defendants Bush and Doe contaminated his kosher food tray on April 28th as retaliation for the grievances he filed against Defendant Simmons on January 13th and April 9th. But he provides the Court with no plausible connection between the protected activity and the allegedly adverse conduct nor any plausible connection between Defendants Bush and Doe and Simmons. In satisfying the causal connection requirement, also known as temporal proximity, the allegations must be

---

[7] It is the Court's view that Plaintiff has barely nudged across the line from conceivable to plausible. *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950-51 (2009). Nevertheless, because we are bound to give the Plaintiff the benefit of every reasonable inference to be drawn from the allegations in the Complaint, we recommend allowing this claim to proceed. *Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, n.6 (1963).

"sufficient to support the inference that the speech played a substantial part in the adverse action."
*Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).  Here,
Plaintiff has failed to connect the allegedly adverse conduct to his protected speech, thus, we
recommend **granting** Defendants' Motion to Dismiss as to the retaliation claims against Defendants
Bush and Doe.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss be **granted in part and denied
in part** as follows:

**1) GRANTED**, as to Eighth Amendment failure to protect claims against Defendants
Bellnier, Duvall, and Bellamy, who were each previously dismissed from this action;

**2) GRANTED**, as to claims of verbal harassment and threats against all Defendants;

**3) GRANTED**, as to Eighth Amendment nutrition claims against Defendants Simmons and
Gary;

**4) DENIED**, as to Eighth Amendment nutrition claims against Defendants Bush and Doe;

**5) DENIED**, as to Eighth Amendment deliberate medical indifference claims against
Defendant Garneau;

**6) GRANTED**, as to First Amendment interference with religion claims against all
Defendants;

**7) GRANTED**, as to conspiracy claims against all Defendants;

**8) DENIED**, as to First Amendment retaliation claim against Defendant Simmons;

**9) GRANTED**, as to First Amendment retaliation claims against Defendants Bush and Doe;

and it is further

     **RECOMMENDED**, that if the above recommendations are adopted, then Defendants Gary and Lumbard should be **dismissed** from this action as there are no claims plausibly stated against them; and it is further

     **RECOMMENDED**, that if the above recommendations are adopted, then Defendants Simmons, Bush, Doe, and Garneau should be ordered to file an answer in response to the Complaint and this matter should proceed to the discovery phase on the remaining claims; and it is further

     **ORDERED**, that Plaintiff continue to take steps to ascertain the identity of the John Doe Defendant; and it is further

     **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   January 5, 2012
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge