**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RONNIE THAXTON,**

       **Plaintiff,**

 vs.               9:10-CV-1318
                   (MAD/RFT)

**A. SIMMONS,** *Corrections Officer, Upstate Correctional Facility*, **BUSH,** *Corrections Officer, Upstate Correctional Facility*, **K. GARNEAU,** *Nurse, Upstate Correctional Facility,* **JOHN DOE,** *Corrections Officer, Upstate Correctional Facility*,

       **Defendants.**
_____

**APPEARANCES:**        **OF COUNSEL:**

**RONNIE THAXTON**
**99-B-0711**
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**    **CHRISTOPHER W. HALL, AAG**
**STATE ATTORNEY GENERAL**
The Capital
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

*Pro se* plaintiff, Ronnie Thaxton, brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging (1) Defendant Simmons retaliated against Plaintiff because of past grievances he filed, (2) Defendants Bush and Doe deprived Plaintiff of nutritional meals, and (3) Defendant Garneau violated Plaintiff's First and Eighth Amendment rights by his deliberate indifference to

Plaintiff's serious medical needs. *See* Dkt. No. 60 at 1. Defendants have moved for summary judgment on the grounds that (1) Plaintiff failed to exhaust the available administrative remedies regarding his claims against Defendants Bush and Garneau, (2) Defendants Bush and Simmons were not personally involved in the claimed constitutional violations, and (3) Plaintiff did not suffer a serious injury to support his medical deliberate indifference claim against Defendant Garneau. *See* Dkt. No. 50-5. In a May 23, 2013 Report-Recommendation and Order, Magistrate Judge Treece recommended that Defendants' motion for summary judgement be granted.

Currently before the Court are Plaintiff's objections to Magistrate Judge Treece's Report-Recommendation and Order.

## II. BACKGROUND

Plaintiff's claims arose from events between January 12, 2009, and April 28, 2009, while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") as an inmate in the Upstate Correctional Facility ("Upstate C.F."). *See* Dkt. No. 50-1 at ¶ 1.

On January 12, 2009, Plaintiff filed a grievance, which the parties have agreed implicated Defendant Simmons, complaining about receiving his meals later than other prisoners. *See id.* at ¶¶ 2-3. On April 6, Defendant Simmons delivered Plaintiff's evening meal which contained several strands of hair. *See id.* Plaintiff complained to Defendant Simmons about the hair and he promptly gave Plaintiff another tray of food. *See* Dkt. No. 50-3 at 25.[1] Plaintiff did not see anyone place the hair in his meal, did not see Defendant Simmons remove the plastic wrap from

---

[1] To avoid confusion, any time the Court references a specific page number for a document on the docket, the Court will cite to the page number assigned by the Court's electronic filing system.

the meal, and Defendant Simmons stated that he had not "played" with Plaintiff's food. *See id.* at 26, 28. Plaintiff contends that Defendant Simmons placed the hair in the food as a means of retaliating against him for the January 12 grievance. *See id.* at 31.

On April 28, 2009, Defendants Bush and Doe served Plaintiff his evening meal containing a piece of metal in his sardines. *See* Dkt. No. 50-1 at ¶¶ 16-17, 25. Defendant Doe did not touch the food and only delivered Plaintiff his Kool-Aid and hot water. *See* Dkt. No. 50-3 at 39. Plaintiff did not see Defendant Bush tamper with the food and discovered the piece of metal when he bit into his sardine sandwich. *See id.* at 38. Plaintiff "noticed drops of blood in the food" after the piece of metal cut his mouth, at which point he called for medical attention. *See id.* at 45.

Defendant Nurse Garneau and Sergeant Lombard came to Plaintiff's cell within twenty minutes of his request for medical attention. *See id.* at 34. Defendant Garneau did not inspect Plaintiff's mouth, but stated that there was not much damage and that Plaintiff should not "be a cry baby." *See id.* at 34. Plaintiff's bleeding completely stopped within an hour and was not "actually a cut anymore" within three or four days. *See id.* at 50. Plaintiff experienced slight difficulty eating and sleeping directly after the incident, but was able to get the "right amount" of food and sleep. *See id.* at 54, 56. Plaintiff requested sick call at the Attica Correctional Facility ("Attica C.F.") about a week after the incident. *See id.* at 54. There, he saw another nurse and a dentist and neither reported any lasting injuries or effects from the incident. *See id.*

In a May 23, 2013 Report-Recommendation and Order, Magistrate Judge Treece recommended that the Court grant Defendants' motion for summary judgment and close this case. *See* Dkt. No. 60. In his objections to the Report-Recommendation and Order, Plaintiff generally just reiterates arguments he made in opposing the motion for summary judgment. *See* Dkt. No. 61. Specifically, Plaintiff presents the following arguments: (1) the metal placed in his sardine

3

sandwich deprived him of the "minimal civilized measures of life's necessities which was nutritionally adequate food that is 'prepared' and 'served' under conditions which do not present imminent danger to health and well being of inmates who consume it;" (2) Defendant Garneau violated his Eighth Amendment rights when she refused to examine or treat his injuries; and (3) that the injury to his mouth lasted approximately thirty days and he was prescribed Tylenol for the injury, which shows that it was more than a *de minimis* injury. *See* Dkt. No. 61 at 2-4.

### III. DISCUSSION

**A.    Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at

36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (qquoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely

unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Exhaustion**

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). Second, if the IGRC decision is appealed, the superintendent of the facility issues a decision after reviewing the IGRC's determination. *See id.* at § 701.5(c). Third, if the superintendent's decision is appealed, the final administrative decision is made by the Central Office Review Committee ("CORC"). *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to § 1983. *See Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed the district courts to consider:

6

> "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

*Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

In the current case, Defendants claim that Plaintiff failed to exhaust all available administrative remedies in his claims against Defendants Bush and Garneau for meal tampering and deliberate indifference because he did not file a timely grievance with the IGRC. *See* Dkt. No. 50-5 at 10. Plaintiff contends that he filed a timely grievance and that special circumstances prevented him from complying with the administrative procedural requirements. *See* Dkt. No. 54 at 11-13.

Plaintiff claims that on April 29, 2009, he filed a grievance for both incidents and sent the superintendent a letter describing the events. Plaintiff has provided a copy of both the grievance and the letter to support his claim. *See* Dkt. No. 55 at 4-5, 8-9. On June 1, 2009, Plaintiff followed up his grievance by requesting an update on its status and received notice on June 8 stating "there is no grievance on file" concerning his complaints allegedly filed on April 29, and that "[Plaintiff's] complaint is being returned to [him] to file at [his] present facility." *See id.* at 7. On June 16, 2009, Plaintiff filed another grievance with the IGRC at Lakeview Correctional Facility about the April 28 incidents which was denied because of untimely service. *See id.* at 8, 10. Plaintiff then appealed this decision to the superintendent, who affirmed the IGRC decision. *See id.* at 10. On June 22, Plaintiff made a final appeal to the CORC who affirmed the superintendent's decision. *See id.* at 13.

While an untimely grievance does not properly exhaust available administrative remedies

7

under the PLRA, a question of fact exists as to whether Plaintiff never filed his initial grievance on April 29, as Defendants claim, or that, as Plaintiff claims, he filed a timely grievance that was lost or tampered with by Defendants. Such credibility assessments are to be resolved by a trier of fact. Accordingly, the Court finds that a material issue of fact exists as to whether Plaintiff's failure to exhaust administrative remedies should be excused due to special circumstances. Therefore, Defendants' motion for summary judgment is **DENIED** on exhaustion grounds.

**C.     Personal Involvement**

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Further, in regards to § 1983, "the doctrine of *respondeat superior* cannot be applied . . . to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, No. 97 CIV. 2419, 1997 WL 576038, *2 (S.D.N.Y. Sept. 15, 1997). Therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556, U.S. 662, 676 (2009).

*1. Defendant Simmons*

Plaintiff contends that, on April 6, Defendant Simmons delivered him a tray of food covered with hair in retaliation for a grievance Plaintiff had previously filed. Plaintiff did not see Defendant Simmons place hair on the food or see him remove the plastic wrap from the food. *See* Dkt. No. 50-3 at 26. According to Plaintiff, Defendant Simmons stated that he did not play with Plaintiff's food, and if he did, "[Plaintiff] would know it." *See id.* Plaintiff further testified that

8

"the only reason why I held [Simmons] responsible is because he's the one that's giving me the tray." *See id.* at 28.

Based upon the evidence presented, no rational juror could conclude that Defendant Simmons was personally involved in tampering with Plaintiff's food on April 6 merely because he served the food that day. Therefore, Defendants' motion for summary judgment on this matter is **GRANTED**, and Plaintiff's claim against Defendant Simmons is **DISMISSED**.

### *2. Defendant Bush*

Similar to the claims against Defendant Simmons, Plaintiff claims Defendant Bush contaminated his food by placing a piece of metal in the meal served on April 28. *See id.* at 38. Plaintiff testified that Defendant Bush delivered his meal on this date, but Plaintiff did not see Defendant Bush tamper with the food. *See id.* Plaintiff assumed Defendant Bush was responsible for the metal because of "the relationship of . . . the officers and when I told him that I had the metal in there, the smirk, the look that he had, that's what made me think he purposely put it in there, because he was smirking like it was a joke or something." *See id.*

Based upon the evidence presented, no rational juror could conclude that Defendant Bush was personally involved in contaminating Plaintiff's food simply because he delivered the meal and then "smirked" after Plaintiff complained of the metal. Therefore, Defendants' motion for summary judgment on this claim is **GRANTED**, and Plaintiff's claim against Defendant Bush is **DISMISSED**.

### **D. Deliberate Indifference**

In order for a plaintiff to effectively state an Eighth Amendment claim for denial of

9

adequate medical care, he must demonstrate that the prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This does not mean that every prisoner that has not received adequate medical attention has an Eighth Amendment claim, but rather the alleged conduct must be "repugnant to the conscience of mankind" and constitute "an unnecessary and wanton infliction of pain." *Id.* at 105-06.

The deliberate indifference standard for denial of medical care requires demonstration of (1) a sufficiently serious depravation, and (2) deliberate indifference with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citation omitted). The first element is an objective standard to assess the seriousness of a prisoner's medical condition. *See Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citation omitted). This standard includes consideration of "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (other citation omitted). The Second Circuit has recognized that dental injuries may require unique attention due to the likelihood of continuing pain and discomfort, however, "not all claims regarding improper dental care will be constitutionally cognizable." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). While the decision of whether or not to treat a prisoner's injury may rely on an assessment of its seriousness at the moment it occurs, "in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The second element of the deliberate indifference standard is a subjective test requiring

the plaintiff to show that the defendant acted with the requisite culpable state of mind. This state of mind is similar to criminal recklessness and requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In this case, it is uncontroverted that Defendant Garneau responded to Plaintiff's cell after he cut his mouth biting into a piece of metal on April 28, 2009. It is also uncontroverted that Defendant Garneau did not inspect Plaintiff's mouth and told him not to "be a cry baby." *See* Dkt. No. 50-3 at 34. Plaintiff testified that he experienced "pain in [his] teeth" and that, while he "was not leaking blood, [he] was cut, you know in the mouth." *See id.* at 49. The bleeding in Plaintiff's mouth completely stopped within one hour and the cut healed without medical attention within three or four days. *See id.* at 50. Plaintiff experienced some mild difficulty eating and sleeping directly after the incident but was still able to get the "right amount" of food and sleep. *See id.* at 54, 56. About a week after the incident, when Plaintiff requested sick call, his injury was "no longer a cut" and a subsequent examination by a dentist revealed no dental injuries. *See id.* at 54.

While Plaintiff claims that his injury was sufficiently serious to require medical care, "[t]he mere fact that plaintiff disagrees with defendants about the nature of his condition does not give rise to a genuine issue of material fact." *Tindal v. Goord*, 530 F. Supp. 2d 465, 467 (W.D.N.Y. 2008) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). Based on the evidence presented, no reasonable juror could conclude that Plaintiff's injury, which stopped bleeding within an hour and completely healed on its own accord within three or four days, was objectively a sufficiently serious injury. Since the Court finds that Plaintiff did not suffer a sufficiently serious medical injury, the Court need not determine if Defendant Garneau's actions of ignoring medical complaints and calling Plaintiff a "cry baby" rise to the requisite culpable

11

state of mind of deliberate indifference. Therefore, Defendants' motion for summary judgment on this claim is **GRANTED** and the claims against Defendant Garneau are **DISMISSED**.

**E.     Defendant Doe**

In Plaintiff's October 31, 2010 complaint, he named a John Doe Defendant. While the Court has reminded Plaintiff several times that he must ascertain the true identity of, and serve the Doe Defendant, Plaintiff has failed to do so. Rule 4 of the Federal Rules of Civil Procedure states that the plaintiff is responsible for service of the summons and complaint on each defendant within 120 days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m). The Northern District of New York requires that the plaintiff must effectuate service within sixty days. The Court may, upon motion or its own initiative, dismiss a case without prejudice as to any defendant that has not been properly served. *See id.* at 4(m). Since Plaintiff has failed to timely identify and serve the John Doe Defendant and no valid cause of action has been asserted, all claims against Defendant John Doe are **DISMISSED**.

## IV. CONCLUSION

After carefully considering Magistrate Judge Treece's Report-Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Treece's May 23, 2013 Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED in its entirety**; and the Court further

**ORDERS** that the Defendant John Doe is **DISMISSED** due to Plaintiff's failure to timely

identify and serve him; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: September 9, 2013
      Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge